PIERSON v. VICTORY INDUSTRIAL LIFE INS. CO.

——

(January 11, 1932. Opinion and Decree.)

——

Henry Robinson, of New Orleans, attorney for plaintiff, appellee.

Chas. I. Denechaud and Ernest J. Robin, of New Orleans, attorneys for defendant, appellant.

## ON MOTION TO DISMISS

PER CURIAM. Appellee seeks the dismissal of this appeal, and, as reason therefor, alleges that the president of appellant corporation was not authorized by the board of directors to prosecute the appeal, nor to sign the appeal bond on behalf of the corporation.

Appellee suggests, as further ground for the dismissal of the appeal, that a motion to dismiss was filed in the court below.

No objection was made to the action of the president of defendant corporation in defending the suit in the court below.

The right of appeal is favored under our law, and the right to defend a lawsuit on behalf of the corporation carries with it, unless the authority is withdrawn, the right to appeal from an adverse judgment.

In enacting section 35, paragraph 7, of Act 250 of 1928, the Legislature of Louisiana apparently intended to authorize the president of a corporation to take all reasonable and necessary steps to represent the interests of the corporation in all legal matters connected with its affairs. It appears to us that the authority of the president in such matters is presumed to exist, and that the absence thereof must be affirmatively shown. Here, however, the corporation has not filed a motion to dismiss, nor has it joined appellee in her motion, and all that we are told is that, at a meeting of the board of directors called to consider the advisability of taking the appeal, the vote was five to five, a circumstance which, if true, we cannot consider.

Since the president was presumed to have the authority to take the appeal, that authority will be presumed to continue to exist, unless affirmatively shown to have been withdrawn.

That this motion was filed in the court below cannot be taken into consideration by us, since, prior to the day on which it was filed there, the appeal had been lodged here, and therefore the court below had lost jurisdiction.

The motion to dismiss the appeal is denied.

———

HIGGINS, J. This is a suit to recover the sum of $300 cash, said to have been loaned by plaintiff to defendant, an industrial life insurance company, $100 on September 24, 1928, and $200 on July 11, 1929, with interest at the rate of 8 per cent per annum from the respective dates of the loans until paid. The petition alleges that no definite dates for the repayment of the loans were stipulated, but that it was contemplated by both parties that said loans were to be paid within a reasonably short period from their respective dates.

Defendant admitted that it is engaged in the industrial life insurance business; incorporated and doing business under the laws of the state of Louisiana; that the two loans were made by plaintiff to it bearing 8 per cent interest and that no definite maturity dates were set, but that it was understood between plaintiff and defendant at the time the said loans were effected that defendant would have the option of paying the respective loans whenever it would be financially able to do so, in accordance with the provisions of Act No. 246 of 1908; "and that it is not in a position, at this time, to repay the said loans."

There was judgment in favor of plaintiff as prayed for and defendant has appealed.

The record shows that defendant is an industrial life insurance company, organized in November, 1927, under the laws of

Louisiana and conducting a business as such. Plaintiff is one of the organizers and is a member of the board of directors of the company. In August, 1929, the state auditor examined the company's books and discovered that the initial cash fund of $5,000 required by section 3 of Act No. 246 of 1908 to be in the treasury before beginning business had been impaired due to the fact that certain expenses had been incurred in the organization of the company and had been paid out of this fund. The secretary of state ordered the officials of the company to replace this money. In order to do this, the officers called a meeting of the members of the board of directors on August 9, 1929, at which meeting the directors were solicited to make the necessary loans to cover the deficit. The first time plaintiff was requested to assist in relieving the financial distress of the company she loaned $100 on September 24, 1928, and the second time she was solicited, July 11, 1929, she advanced the sum of $200. It appears that she was not furnished with any note or acknowledgment of the indebtedness until her attorney, some time prior to the filing of this suit on March 10, 1931, made demand upon the company, when notes were furnished.

On the issue of when the $100 loan was to be paid, plaintiff admitted in her testimony that she was familiar with the financial difficulty in which the company was involved and that it was explained to her that she was loaning the $100 because the company's initial cash fund was impaired on account of deducting organization expenses, and that the money advanced by her would be returned "as soon as there was sufficient money in the treasury." On the question of when the $200 loan was to mature plaintiff testified that it was agreed that this money would be returned in two weeks after it was advanced.

When counsel for defendant sought to show both on cross examination and by direct evidence that the ten members who put up the original $5,000 did not make any provision for the payment of the organization expenses and, through ignorance and error of law, deducted these expenses from the initial cash fund of $5,000, which the secretary of state ordered to be restored, and that the company was not in a financial position to pay these loans, the trial court, upon timely objection, ruled that the evidence was immaterial and inadmissible on the ground that section 3 of Act No. 246 of 1908 only covered money that was loaned or advanced for organization purposes at the time an industrial life insurance company was being organized. Counsel for defendant timely and properly reserved a bill of exception to the court's ruling.

But, there is sufficient evidence in the record to show that the $100 was advanced by the plaintiff for the purpose of making up the deficit in the initial cash fund of $5,000 from which the organization expenses had been erroneously deducted and that the company, at the time the suit was filed and at the time of the trial, was financially unable to pay plaintiff.

The trial court permitted cross examination of plaintiff and also admitted the testimony of defendant's witnesses on the issue of whether or not the $200 was loaned for the purpose of covering organization expenses. So as we view the record, while the trial court on several occasions erroneously ruled out evidence tending to establish the defendant's position, nevertheless this evidence was finally admitted into the record. Therefore, we do not believe it necessary to remand the case.

Section 3 of Act No. 246 of 1908 provides:

"Be it further enacted, etc., That all companies organized on the mutual plan shall have an initial fund of five thousand dollars in cash in the treasury before beginning business. A mutual company may borrow or assume liability for the payment of a sum of money sufficient to defray the reasonable expenses of its organization and to provide the amount of the initial fund as aforesaid upon an agreement, that the same with interest at a rate not exceeding eight per cent per annum shall be repaid only in the event that after such repayment with interest the corporation shall be left possessed of sufficient assets to meet all its liabilities and to maintain intact its initial fund, and such agreement shall provide that the corporation shall have the option to make such repayment whenever it shall be able to do so in accordance with the aforesaid conditions."

In view of the plaintiff's admission that the $100 was advanced for the purpose of replenishing the $5,000 initial cash fund so as to make up for the organization expenses which had been erroneously deducted from it and that the loan was to be paid as soon as there was sufficient money in the treasury to justify it, we experience little difficulty in finding that the $100 was advanced under the provisions of section 3 of Act No. 246 of 1908.

It is clear that the company, at the time the loan was made, at the time the suit was filed and at the time of the trial of the case, was not in financial condition to repay the loan. Consequently we are unable to give plaintiff judgment, at this time, for this money because under section 3 of the act "the corporation shall have the option to make such repayment whenever it shall be able to do so in accordance with the aforesaid conditions," but we reserve to plaintiff her right to proceed against defendant at any time that its financial condition will permit her to recover as provided in section 3 of the act.

While the evidence is conflicting on the question of the maturity of the loan of $200, plaintiff stating that the money was to be repaid in two weeks and two officials of the defendant company claiming that the money was loaned for the purpose of again making up a deficit in the initial fund, it appears to us that the law and evidence is with plaintiff on this issue.

The loan of $200 was made on July 11, 1929, and, therefore, nearly one year subsequent to the time that the $100 was loaned on September 24, 1928, for the purpose of making up the deficit due to the fact that organization expenses had been deducted from the initial cash fund. When the second deficit occurred and the $200 was advanced "a sum of money sufficient to defray the reasonable expenses of the organization" had been raised and the cash initial fund restored under the secretary of state's directions and orders in August, 1928, therefore, the loan of $200 could not have been for the purpose of meeting this same item of expense. We conclude, therefore, that plaintiff's evidence that the $200 was to be repaid in two weeks is correct and that section 3 of the act is not applicable, because the $200 was not loaned for the purpose of defraying the initial organization expense.

For the reasons assigned the judgment of the lower court is amended by reducing the amount awarded plaintiff from the sum of $300 to the sum of $200, dismissing plaintiff's suit as of non-suit in so far as the $100 loan is concerned, and reserving to plaintiff her right to sue the company in accordance with the provisions of section 3 of the Act (246) of 1908 and in all other respects the judgment is affirmed at appellant's cost.